## UNITED STATES v. WHITING.

## WHITING v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. March 5, 1927.)

### Nos. 2030, 2031.

1. **Appeal and error ⬦1010(1)—Finding of fact by district court, if sustained by evidence, is not subject to review.**

Finding of district court on question of fact, if sustained by any substantial evidence, is not subject to review.

2. **United States ⬦73—United States inspection officer could not capriciously or arbitrarily reject material or work required to be submitted under contract.**

United States inspection officer could not capriciously or arbitrarily reject material or work submitted for his inspection under contract providing articles, when completed, should be submitted to him.

3. **United States ⬦74—Company supplying bungs for water breakers, manufactured for United States under protest, after demand by inspecting officer did not waive claim for damages.**

Company contracting with United States to manufacture and sell water breakers or casks for use in lifeboats, and supplying different bungs therein under protest, after demand by inspecting officer, did not thereby waive its claim for damages by reason of rejection of bungs, which it had supplied in accordance with samples submitted to it.

4. **United States ⬦74—Damage because of government's rejection of manufactured article is to be determined from evidence, and not amount claimed in complaint.**

Damage to which company is entitled for rejection of bungs on water casks manufactured for government is not to be determined by amount claimed in complaint, but from the evidence showing loss occurring.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Suit by Herbert A. Whiting, as assignee of the James D. Rawles Company, against the United States, wherein the United States filed a counterclaim. To review the judgment rendered, both parties bring error. Reversed and remanded.

George R. Farnum, Asst. U S. Atty., of Boston, Mass. (Harold P Williams, U. S. Atty., of Boston, Mass., on the brief), for the United States.

John J. Hartigan, of Boston, Mass. (Robert A. B. Cook, James H. Duffin, and Phipps, Durgin & Cook, all of Boston, Mass., on the brief), for assignee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. In No. 2031, Herbert A. Whiting, as assignee of the James D. Rawles Company, sought to recover of the United States damages for breach of a contract entered into by said company with the United States on August 24, 1918, for furnishing water breakers, or casks, designed for use in lifeboats. The contract provided, so far as material, that these breakers were to be furnished "in strict accordance with Bureau of Construction and Repair standard plan, boat details, sheet 5 (C & R) 38950, copies of which can be obtained upon application to the Bureau of Construction and Repair, Navy Department, Washington, D. C. Samples of the above breakers may be seen on application to the supply officer, Navy Yard, Portsmouth, New Hampshire, or samples will be furnished to bidders for examination upon their written guaranty to return them."

The contract further provided for an inspection, upon completion of the breakers, by officers authorized by the United States to inspect and examine the same, and that no article furnished under the contract should be accepted until it had been inspected and approved by such officer or officers. There was conflicting evidence whether or not the plan containing the specifications submitted by the supply officer to the Rawles Company had attached to it a modification of the bungs shown by sketch designated "S–224." There was evidence that an officer of the Rawles Company was given by the supply officer at the Portsmouth Navy Yard samples of the bungs and spigots with which the breakers were to be equipped.

It is not in dispute that, after the completion of the contract, the breakers which had been manufactured were submitted for inspection to the proper officers, and were rejected on the ground that the bungs did not conform to the standard plan, sheet 5 (C & R) 38950, mentioned in the contract, unmodified by sketch designated as "S–224," and that the spigots were not of good workmanship.

It was claimed by the petitioner that the bungs were made in accordance with a modification of the plan and specifications which was attached to the same and designated as "S–224," and also in accordance with the samples which had been furnished by the officer designated in the contract, and that this was true of the spigots.

Upon the rejection of the breakers by the inspecting officers, the Rawles Company equipped the breakers with bungs in accordance with the unmodified plan, and also with spigots made according with a slight deviation from it, which was agreed upon. The breakers were accepted by the United States, and the Rawles Company received in payment the sum contracted to be paid, but with a protest, it is claimed. No written protest was filed, and evidence of it came from the testimony of the managing officer of the company.

The learned judge of the District Court has found that the breakers were made according to specifications and samples which were submitted to the Rawles Company by the supply officer, but that the spigots were not of good workmanship.

There was conflicting evidence in regard to whether the sketch of the bung designated as "S–224" was attached to the plan or not when the contract was made; but the evidence was uncontradicted that the bungs and spigots were made in accordance with the samples submitted.

[1] Under the well-established rule, this finding, if sustained by any substantial evidence, is not subject to review.

There was evidence which would sustain the finding of the presiding judge. The managing officer of the Rawles Company testified that he applied to the supply officer at the Portsmouth Navy Yard for samples of bungs and spigots which were to be used in the breakers to be supplied under the contract and that he received such samples and also a blueprint or plan which had attached to it a sketch of the bung to be used and that the breakers were equipped with bungs and spigots built strictly in accordance with these samples and with the sketch annexed to the plan which had been given to him.

[2] While the contract provided that the breakers, when completed, should be submitted to the proper inspection officer and payment would not be made until accepted by him, he could not capriciously or arbitrarily reject material or work submitted for his inspection.

By its finding, the District Court impliedly finds that he arbitrarily rejected the breakers because of the bungs which were supplied, but that there was ground for their rejection because of defective workmanship in the construction of the spigots.

[3] The Rawles Company was forced to supply the bungs demanded by the inspecting officer and also supplied the spigot which was agreed upon, although a deviation from that shown in the plan designated in the contract. There was evidence that it did this under protest and, in view of this fact, we do not think it can be said that the Rawles Company waived its claim for damages by reason of the rejection of the bungs which it had supplied in

accordance with the samples submitted to it by the supply officer. See St. Louis, Brownsville & Mexico R. R. Co. v. United States, 268 U. S. 169, 174, 175, 45 S. Ct. 472, 69 L. Ed. 899.

The District Court has found that the Rawles Company was entitled to recover the amount of $6,037.72 as damages by reason of the failure of the United States to accept the breakers equipped with the bungs which the company furnished in accordance with the modified plan and samples. It arrives at this amount by deducting from $9,453.72, the amount claimed in its complaint by the company, the amount paid by it for furnishing new spigots for the 10,675 casks, at a cost of 32 cents apiece, making a total of $3,416.

[4] The damage, however, to which the company is entitled, is not to be determined by the amount claimed in the complaint, but from the evidence, which discloses that the amount paid by the Rawles Company for supplying the bungs which it first supplied was $3,202.-50; that it bought these bungs from the W. C. Murphy Company at 30 cents apiece, and was compelled to furnish new bungs at an additional expense of 25 cents apiece, or a total of $2,668.75, making a total loss to it on account of the bungs of $5,871.25.

The spigots were rejected, not because they did not conform to the unmodified plan, but because of defective workmanship, and those supplied in their place were supplied in accordance with an agreement between the inspecting officer of the company and were accepted by him. There could be no basis for a claim for damages on account of the spigots.

It is also in evidence that the company received $656.50 as salvage for the rejected bungs and spigots. This, deducted from its claim of damages for the rejection of the bungs, amounting to $5,871.25, leaves a balance of $5,214.75 as the claim of the company against the United States, for which it was entitled to judgment.

The counterclaim of the United States arose from an overpayment made by it to the Rawles Company for brass nuts which had been furnished. It is not in dispute that such overpayment was made, and that it occurred by reason of taking as the unit the nut, instead of its weight; that is, the government paid a price based upon the value per nut, instead of value per pound. This overpayment amounted to $26,480, for which the United States gave the Rawles Company credit for $18,574.03 upon other bills for supplies which had been furnished by it, leaving a balance due it of $7,905.97, which has been further reduced by a credit of $90.96.

Upon discovery of this error, the Rawles Company was notified and acknowledged its indebtedness in the amount claimed and promised to make the refund in six installments, over a period of about a year and a half; the writer of the letter stating that notes were offered in payment because of business conditions, which would not allow large disbursements of cash. The United States refused to accept the notes, unless they were secured by a bond of a recognized surety company.

The District Court has found that there was due the United States because of this overpayment the sum of $7,815.01. This, we think, was correct. Deducting from this amount the sum due the company, $5,214.75, there should be judgment for the United States for $2,600.75.

The judgment of the District Court is reversed, and the action is remanded to that court for further action not inconsistent with this opinion; neither party to recover costs in this court.